Judge Robertson,
delivered the opinion of the Court.
On the 31st day of October, 1820, James and Richard M. Johnson, mortgaged to Cave Johnson and Thomas D. Carneal, a valuable real estate, consisting of land and slaves, to secure sundry debts, to be due and payable in 1821, 1822 and 1823, amounting in the a-ggregate to $15,000.
On the 1st of October, 1321, James Johnson executed a mortgage to Thomas D. Carnearon divers tracts of land, houses and lots, thirty-eight slaves, an extensive assortment of farming utensils, a valuable stock of cattle, hogs, sheep, &c. a very large quantity of household and kitchen furniture, consisting of a great variety of rich and valuable articles, and including even bed curtains, spoons, knives, pots, &c. The condition of this deed is as follows, to-wit: “This deed is to operate as a mortgage for certain debts due from the said James to the said Carneal, and for certain liabilities of said Carneal, for the said James; and it is further understood that this mortgage shall stand good, for- any debts that may be contracted, between the pari *224 ties, as the object of the said James W tó dischargé debts which he may owe others, and it is the wish of said James that the said Thomas D. should aid him in the discharge of them, when specially requested, and whenever the debts and liabilities before referred to, and any further debts to be contracted as above shall be discharged by the said James; then this obligation to be void,” &c. &c.
.‘amos Johnson remained in possession , of mortgaged property.
His condition at the date of the mortgage.
The depositions.
Equity of redemption in all the mortgaged property sold & purchased, by Wm. Johnson, son of James.
*224 James Johnson remained in the possession and use of all the property mortgaged, sold some of the slaves and sent others to the lead mines, on the Mississippi, with the knowledge and consent of Carneal.
He owed niore than this estate ivas worth at the date of the two mortgages, as proved by his deposi- • tion, and that of R. M. Johnson.
These depositions also state that the! mortgage to Carneal was made dona fide, and was designed to secure the properly from being sacrificed by creditors, and by giving James Johnson the use of it exempt front forced sales, by execution, to enable him to appropriate it and its profits most advantageously, to the payment of debts; and that these mortgages had enabled him to pay at least $50,000 more than he could have paid, without the protection and facilities afforded by them.
it does not appear what advances or whether any were made by Carneal after the date of the mortgage to him of 1821; nor how much was due to him at that time; nor whether, if any thing was due, it was a new debt, or part of it the same secured by the mortgage,to him and Cave Johnson.
Nor does it appear whether the debt for which the' mortgage of 1820 was given, had been discharged or not. Neither James or R. M. Johnson says any thing in their depositions about the co-mortgagee, Cave Johnson. But James Johnson swears that Carneaf had loaned to him $15,000, and paid for him to the United States Bank $30,000.
. On the 23rd of December, 1822, on the advice of R. M. Johnson, as proved by his deposition, the equity of redemption in all the mortgaged property, was sold *225 ’under two executions against James Johnsonand others, for $369, the amount of the executions, and was purchased by William Johnson, a son of James, at the quest of his father, as proved by William’s deposition, but bona fide for himself, ás he swears in the same deposition.
Sheriff’s deed William'.
Bucklin issues to the^heriff5 and sheriff’s return,
Condition of P10Petty*
Surf against the sheriff for a false return, Instruction ^B|" given by the circuit court
If any cir-°”^e^^hioh the law would adjudge, per o^ro^whioh the jury might rationally infer fraud, as between the parties, to the mortgage & the purchaser of the equity & creditors, the instructions erroneous. Peremptory instructions only allowed when the evidence is clear and all on one side, even then it is more correct to instruct hypothetically.
*225 The deed from the sheriff to William Johnson, for the equity of James Johnson, is dated December 23d, 1822, but not acknowledged Or deposited with the clerk of the Stott county court until the 3tst day of May, 1825.
On the 24th day of May, 1825, Bucklin issued his .fieri facias from the office of the clerk of the Scott circuit court, against the estate of James Johnson, for §747 15 cents, and having delivered it to Smith, a deputy of Thompson,the high sheriff of Scott county, directed him to levy it on the estate of James Johnson, then in his possession in said county, which the sheriff refused to do, unless Bucklin would indemnify him, which be having failed to do;, the execution was returned “no properly.”
James Johnson had retained the possession and enjoyed the use of the mortgaged property, and was in the apparent possession and use of it, or most of it, when Bucfclin’s execution issued: but William Johnson states in his deposition that he, (William) had the 'control of it:
Tms suit was brought for a false return by the sheriff
. After milch evidence for piaintiff and defendant, in the court below, of which the foregoing statement is the substance^ the circuit judge, On the motion of defendant below, instructed the jury that if they believed the testimony.; they should find for the sheriff ■
Whether this instruction was correct or not^ is the only question it is necessary for Us to decide;
The instruction of the circuit judge is evidently erroneous. The hinge on which the whole case must hang, is the fact of fraud Or no fraud in the mortgages, and the sale of the equity of redemption. If any cireumstances were proved which the law would adjudge per se, fraudulent, or from which a jury might reason *226 ably infer fraud, as between the parties to the deeds and the purchaser of the equity, so far as creditors were concerned^ the court had no right to give to the jury, the peremptory instructions which were given.
General prinnounce/by tbe court/
When the evidence is all on one side, and is clear, uncontradictory and positive, such an instruction as thatgiven in this case, might be allowed. But even then, it would be unusual, and it would be more proper, to instruct hypothetically, that, if certain facts were proved to the satisfaction of the jury, they should find accordingly.
It does not become necessary for us to decide whether any fact exist in the case, as stated in the foregoing synopsis, which, by construction of law, would render either the mortgages or the purchase of the equity of redemption void, as against the claims of judgment creditors of James Johnson. No instruction to this effect was asked for by Bucklin, and this question does not necessarily arise from the assignment of errors, We shall, therefore, forbear to give any opinion on this point. We will, howeyer, slate some general doctrines in the abstract.
First. If a deed on its face, show that it was made with the design of hindering or delaying any creditors, 110 ma^er what may be the actual or ostensible consideration, it is, “per se,” fraudulent as to them.
Second. If the deed for personal property or slaves, be absolute, and the possession shall not accompany and correspond with the title, the law denounces the deed as fraudulent.
Third. As between the vendee and the creditors or purchasers of the vendor, or the owner of the right attempted to be passed by the deed, without notice, if the deed be not proved or acknowledged, and deposited for registration in the proper office, within the time required by law, it is absolutely void. What application these principles may have to the mortgage and deed, by the sheriff in this case, we are not called on to decide; nor need we now say whether there is any analogy between the mortgage to Carneal and that recited in the case of Ward, &c. vs. Trotter, &c. in 3 Monroe. It will be time enough to do this when the record shall require *227 if. For the present we have enough to do, without looking beyond the instruction of the court.
Mortgagor remaining in possession of mortgaged property, before condition broken, is not evidence of fraud. It may be after condition forfeited.
The jury have the right to weigh and determine the character and credibility of the testimony, when various or contradictory, free from the control of the court. Where pl'tff. has directed' the sheriff to levy upon property of the def’t. in his possession, tho’ mortga- ' ged and equity of redemption sold, and he refuses; unless indemniOed, and returns ‘no property,” sheriff is responsible for a false return, if the mortgage or sale of equity of redemption be fraudulent ns to creditors, tho’ pH’if. refused to indemnify. No claim to indemnity until a jury has found the property not subject.
*227 Bat the possession of the mortgagor after the date of the mortgage, is not, of itself' conclusive and incontrovertible evidence of fraud. Kent, in the second volume of his Commentaries, endeavors to maintain an analogy in this respect, between mortgages and absolutedeeds. But the cases cited by him for this purpose, are insufficient to sustain his effort; and are controlled by a preponderating weight of authorities, directly against them. Besides, we cannot admit that the reason for declaring a possession inconsistent with an absolute deed, fraudulent in law, against creditors of the possessor, applies to the case of a common mortgage or conditional sale. And in this we think we are sustained by the authority of the supreme court of the nation, and of those of New Yorkand Virginia, and Kentucky, and certainly by the public opinion and. long and almost invariable practice in our own slate. These are strong evidences of what the law is. And whatever it may be, or may be considered to be elsewhere, or whatever arguments of policy may be urged to show why it should have been originally settled differently, we cannot disturb what we believe to bo the well established doctrine of this state on this subject.
The possession of the mortgagor, after the forfeiture of the condition, may be evidence of fraud, and combined with other circumstances, or even alone, m?iy be satisfactory to a, jury. It might be so.characterized by circumstances as to he irresistible evidence of fraud in fact.
Whether, in this case, the jury ought,, if they had been left free by the court, to have found that the property, or any of it, was subject to Bucklin’s execution, it is not our province to decide; nor is it proper for us to say whether the court ought to have decided, if asked to do so, that the deeds or mortgage were fraudulent in law,
But certainly, many facts were presented, from which the jury had a right to infer fraud, and if they had done so, their verdict could not have been controlled'. It was their province to weigh all the evidence on both *228 sides, and deduce from it such a conclusion as right reason, uninfluenced by prejudice, or the mandatory interference of the court, might properly deduce from a survey of all the facts.
Petition for a re-hearing.
Crittenden and Brown, for plaintiff; Chinn and Depew, for defendant.
If either the mortgage to Carneal, or the deed to William Johnson, was, by operation of law, or by a rational induction of facts, fraudulent, the sheriff was bound, by the duties of his office, to levy Bucklin’s execution; and should be made liable, for a false return. Bucklin was not bound to indemnify him, unless after a levy a jury had failed to subject the property to the execution, or in other words, had found that it was not subject.
As the court withheld from the jury its right to decide on the weight and effect of the evidence, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.